[No. F002627. Fifth Dist. Nov. 30, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN WILLY ROBERTS, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Part II of this opinion is not published, because it does not meet the standards for publication contained in California Rules of Court, rule 976(b).

COUNSEL

Cliff Gardner, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Garrick W. Chock, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**BROWN (G. A.), P. J.**—John Willy Roberts appeals from a judgment on a jury verdict finding him guilty of attempted robbery (Pen. Code, §§ 664/

211) and assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)). The jury found true the allegation Roberts used a knife, a dangerous or deadly weapon (Pen. Code, § 12022, subd. (b)) during the attempted robbery. By court trial, the allegation that Roberts had suffered a prior conviction for second degree burglary was found true.

Roberts was sentenced to the midterm of two years for the attempted robbery, with a one-year enhancement for his use of a weapon. A three-year term was imposed for the assault with a deadly weapon, with sentence ordered to be served concurrent to his sentence for attempted robbery. Pursuant to Penal Code section 667, subdivision (a), a five-year enhancement was added to Roberts' sentence for the prior burglary conviction.

On appeal, Roberts asserts he was denied his Sixth Amendment right to confrontation by use of a witness interpreter at the preliminary hearing who was not on the recommended list mandated by Government Code section 68562 and the subsequent use of that witness' preliminary hearing testimony at trial. Roberts also alleges three sentencing errors.

## FACTS

Ahmed Alqassari and Ahmed Elshareqi were cash register clerks at the Queen Sheba Market. On October 22, 1982, appellant entered the market, brought two beers up to the counter and said to Mr. Elshareqi something to the effect of "Give [me] all the money or I will take your life." Mr. Alqassari looked over toward the other register where Mr. Elshareqi was (approximately seven to eight feet away) and saw appellant holding Mr. Elshareqi with a knife to the neck. Mr. Elshareqi was being held just outside the counter. Mr. Alqassari proceeded to get his gun from underneath the cash register and pointed the gun at appellant. Mr. Alqassari told appellant to save his own life and the life of Mr. Elshareqi. Appellant attempted to escape, but as he reached the front door Mr. Elshareqi stopped appellant, and Mr. Alqassari held the gun to him and told appellant not to move. Mr. Alqassari told Mr. Elshareqi to call the police.

Police Officers Thomas Brien and Michael Vest arrived at the Queen Sheba Market a few moments later. Appellant was arrested and advised of his *Miranda* rights. Appellant indicated that he understood his rights, and when Officer Brien asked appellant what was happening, appellant responded that he was hungry, went into the store, and used the knife. Appellant indicated to Officer Brien that he did not think anyone would take the knife seriously, but stated that he used it anyway.

## DISCUSSION

### I. *Confrontation*

At the preliminary hearing, the court allowed Mr. Saeed La-Alas, a Yemenese interpreter, to translate for the prosecution's two major witnesses—the victim, Mr. Elshareqi, and the key eyewitness, Mr. Alqassari. By the time of trial, Mr. Elshareqi had returned to Yemen, and pursuant to Evidence Code section 1291[1] the prosecution sought to have his preliminary hearing testimony read into evidence.

Defense counsel objected to the admission of the prior testimony on the ground that appellant was denied his right to effectively cross-examine the witness at the preliminary hearing. Appellant claimed, as he does on appeal, (1) that Government Code section 68562 requires the county to maintain a list of recommended interpreters and mandates the courts to use interpreters from such lists unless good cause is found for the use of an interpreter not on the list, (2) that Kern County maintained such a list which contained the name of one Yemenese interpreter, Mr. Basil Harb, and (3) that Mr. La-Alas was not on the list and good cause was not found for the use of his services rather than those of Mr. Harb. Appellant concluded that Mr. La-Alas was unqualified and that he was thus deprived of his right to confront the witnesses against him. Over appellant's objections, Mr. Elshareqi's preliminary hearing testimony was admitted into evidence.

In arguing against the admission of the prior testimony, defense counsel urged that because Mr. La-Alas was noncertified he was nonqualified and that no showing of his qualifications had been made. The court noted that the issue had been litigated when appellant brought a motion to dismiss pursuant to Penal Code section 995, which was denied. The court refused to rule on the propriety of the denial of the Penal Code section 995 motion, stating that no evidence concerning the qualifications of Mr. La-Alas had been presented to the trial court.

The trial court's ruling cannot be considered error because no evidence was introduced to support the allegation that Mr. La-Alas was unqualified to translate. There was no evidence showing Mr. Elshareqi was misinterpreted at the preliminary hearing, no evidence that Mr. La-Alas did not

---

[1]Evidence Code section 1291 provides in pertinent part: "(a) Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and: . . . [¶] (2) The party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing."

understand what the witness was saying, and no evidence that the court or examiner got responses that did not fit the questions being asked.

However, our inquiry does not end with the trial court's ruling. We interpret appellant's contention also as an appeal from the denial of his Penal Code section 995 motion to dismiss the information based on the alleged use of an unqualified interpreter.[2]

When the prosecution sought to have Mr. La-Alas sworn as a Yemenese interpreter at the preliminary hearing, defense counsel did not contend that Mr. La-Alas was not qualified. Rather, defense counsel merely questioned whether Mr. La-Alas was certified. Nor did defense counsel seek to voir dire the interpreter concerning his qualifications. Mr. La-Alas testified that he had previously interpreted in state and federal courts and was not acquainted with any of the parties to the matter. The prosecution indicated that Mr. La-Alas was the only person available who spoke the specific language of the victim and eyewitness. The court thus found him qualified to interpret.[3]

---

[2]The right to confrontation is a substantial right. (*Jennings* v. *Superior Court* (1967) 66 Cal.2d 867 [59 Cal.Rptr. 400, 428 P.2d 304]; *People* v. *Pompa-Ortiz* (1980) 27 Cal.3d 519, 523 [165 Cal.Rptr. 851, 612 P.2d 941].) Although not "jurisdictional in the fundamental sense" (*id.,* at p. 529), we review appellant's challenge to the denial of his section 995 motion because of the subsequent use of the prior testimony at trial. Review is necessary to determine if appellant was prejudiced.

[3]"MR. VENDRASCO: Your Honor, I have a Yemenese interpreter I'd like sworn in.
". . . . . . . . . . . . . . . . . . . . . . . .
"MR. SPENCER: The question is, your Honor, whether or not this man is a certified court interpreter.
"THE COURT: Are you certified or licensed?
"THE INTERPRETER: Yemenese language, I do interpreting for the state, for federal courts, with all kinds.
"THE COURT: Are you registered?
"THE INTERPRETER: No, I'm doing this for them, I'm not registered for them because you cannot find a Yemenese interpreter.
"MR. VENDRASCO: Have you been in court before?
"THE INTERPRETER: Yes, several times. State and federal.
"MR. SPENCER: What I'm concerned about is this man has been up talking to these people for some time and I'd like to know whether they're friends or there's a connection, whether he's independent of this entire case. And I am concerned about the fact that he may somehow be associated with these people, in and apart from this case.
"THE COURT: Who are the people that you are referring to?
"MR. VENDRASCO: Mr. Elshareqi and Mr. Alqassari.
"THE COURT: Are you friends of either of those persons?
"THE INTERPRETER: This is the first time I have ever seen them.
"THE COURT: You [*sic*] never seen them before?
"THE INTERPRETER: No.
". . . . . . . . . . . . . . . . . . . . . . . .
"MR. VENDRASCO: He's the only one that I could obtain that speaks a specific language of the victims, and he's been in the courtroom, served as an interpreter.
"THE COURT: I will find he's qualified for the purposes of the preliminary only."

■ At the Penal Code section 995 hearing defense counsel again did not present any evidence showing Mr. La-Alas to be unqualified. Appellant has thus waived any objection to Mr. La-Alas' qualifications. (See *People* v. *Smith* (1977) 70 Cal.App.3d 306, 317-318 [138 Cal.Rptr. 783].)

■ Finding Mr. La-Alas qualified to translate would not have been an abuse of discretion even if an objection to his qualifications had been made at the preliminary hearing. "The competence of the interpreter is ordinarily for the trial court to determine." (*People* v. *Mendes* (1950) 35 Cal.2d 537, 543 [219 P.2d 1].) Evidence Code section 752 authorizes the court to appoint an interpreter for witnesses. Although generally not viewed in the light of expert witnesses, the Law Revision Commission comment to Evidence Code section 752 states: "[I]nterpreters are treated as expert witnesses and subject to the same rules of competency and examination as are experts generally." Evidence Code section 720 provides for the qualifications of an expert witness. It states that a person is qualified to testify as an expert if he has any special knowledge, skill or experience and that such knowledge, skill or experience may be shown by any admissible evidence, including the witness' own testimony. Mr. La-Alas spoke the language in question and informed the court that he had interpreted Yemenese previously in state and federal courts. No further challenge was made to Mr. La-Alas' qualifications.

■ The question of a witness' qualifications as an expert is a matter for the trial court, which is given considerable latitude in making its determination. The trial court's ruling will not be disturbed on appeal unless a manifest abuse of discretion is shown. (*People* v. *Kelly* (1976) 17 Cal.3d 24, 39 [130 Cal.Rptr. 144, 549 P.2d 1240].)

■ Finally, we interpret Government Code section 68562[4] in regard to the claim that appellant was denied his right to confrontation. The only

---

[4]Government Code section 68562 provides: "Any appropriation that provides funding for court interpreter services shall identify the county and the court interpreter programs to which it applies. In each county thus designated, beginning one year after the effective date of the designation, the superior court shall establish, maintain, and publish a list of recommended court interpreters, and the trial courts of that county shall utilize only the services of those recommended interpreters *unless good cause is found* by the judge for the appointment of an interpreter not on the recommended list. In establishing a list of recommended court interpreters, the superior court shall select from a list of qualified candidates who have successfully demonstrated proficiency, both written and oral, in an examination conducted by the State Personnel Board but may also impose additional testing requirements and consider additional standards, as necessary for equity or to recognize local conditions. The State Personnel Board shall establish minimum standards of proficiency of language skills, both written and oral, in both English and the language to be interpreted. In establishing these criteria, the State Personnel Board shall take into account standards adopted by the Judicial Council to ensure a court interpreter's understanding of the technical terminology and procedures used in the courts. The State Personnel Board shall administer an appropriate examination and certify to the superior courts a list of qualified interpreters as frequently as needed to ensure that qualified interpreters are available." (Italics added.)

manner by which appellant's contention would find merit would be to conclude that: (1) good cause was not substantiated for the use of a "non-listed" interpreter, and (2) the use of a "non-listed" interpreter, without a showing of good cause, requires reversal per se.

On the record before this court, it may be inferred that the use of Mr. La-Alas' services was predicated upon "good cause." The district attorney informed the court that Mr. La-Alas was the only person he could find with the ability to translate for the two witnesses. Although there was one qualified interpreter on the county list, and perhaps the court should have inquired as to whether the district attorney was aware of Mr. Harb's existence and, if so, when Mr. Harb would be available, it is reasonable to conclude that the district attorney's statement and the lack of objection by defense counsel sufficiently constituted good cause under the statute.

Even if it is assumed, arguendo, that good cause was not substantiated, we do not construe the Government Code to mandate that use of a "non-listed" interpreter results in the per se use of an unqualified interpreter and a per se denial of a defendant's right to confrontation.[5] Some prejudice to the criminal defendant must be shown.[6]

Appellant has not shown prejudice in any fashion and has not demonstrated that he was in any way denied his right to effectively cross-examine any of the witnesses against him. His motion to dismiss the charges against him was properly denied.

II. *Sentencing**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

CONCLUSION

The judgment is modified to stay execution of appellant's sentence for assault with a deadly weapon, the stay to become permanent when appellant's sentence for attempted robbery is completed; the five-year enhancement is stricken. As so modified, the judgment is affirmed. The trial court

---

[5]It is exactly on this basis that appellant's Penal Code section 995 motion was denied.

[6]Denial of proper interpreter services may impair a defendant's right to confront adverse witnesses. (See *People* v. *Carreon* (1984) 151 Cal.App.3d 559 [198 Cal.Rptr. 843].) However, because appellant in the present case was not in need of an interpreter, the situation cannot be analogized to the recent dual-interpreter/borrowed interpreter cases of *Carreon* and *People* v. *Aguilar* (1984) 35 Cal.3d 785 [200 Cal.Rptr. 908, 677 P.2d 1198].

*See footnote, *ante,* page 350.

is directed to forthwith prepare a new abstract of judgment reflecting the changes and transmit a copy of the amended abstract to the Department of Corrections.

Hamlin, J., and Hardin, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.