*957
 
 OPINION
 

 Per Curiam:
 

 Respondent David Middleton stands accused of two counts of murder on theories of both premeditation and felony murder, two counts of kidnapping, one count of grand larceny, one count of fraudulent use of a credit card, one count of possession of stolen
 
 *958
 
 property, and two counts of being an ex-felon in possession of a firearm. After a preliminary hearing, the justice’s court bound respondent over for trial. Respondent then filed a pretrial petition for a writ of habeas corpus charging that the state had failed to present sufficient evidence at the preliminary hearing to establish the corpus delicti of the crime of murder and had therefore failed to establish probable cause to bind him over for trial. The district court denied the petition. On November 30, 1995, this court issued its Opinion in Frutiger v. State, 111 Nev. 1385, 907 P.2d 158 (1995). On February 7, 1996, respondent filed a motion for reconsideration of his original habeas petition and included a challenge on the same grounds to the state’s charges of murder under the felony murder rule. The district court held a hearing, and on June 6, 1996, it granted reconsideration and granted the petition for a writ of habeas corpus. The state appeals. NRS 34.575(2).
 

 According to testimony presented at respondent’s preliminary hearing, on August 8, 1994, Thelma Davila disappeared suddenly from the apartment she shared in Reno with her sister, Dora Valverde. Valverde left Davila napping on the couch in the morning. When Valverde returned from work in the evening, the door was unlocked, the television was on, a plant was knocked over, Davila’s wallet and keys were on the table, a stash of several hundred dollars in a basket was intact, but Davila was gone, as were the blankets she had been lying under. Davila was known as a consistently reliable and stable person, she met her appointments, she showed up for work. However, after August 8, 1994, she failed to keep a scheduled dentist’s appointment, and she failed to appear for work at her job at Circus Circus. Valverde filed a missing person’s report with the Reno police on August 10, 1994.
 

 Sometime between February 3 and February 6, 1995, elementary school teacher Katherine Powell disappeared without explanation from her Reno home. She failed to meet her cousin on February 4, 1995, for a ski trip in Tahoe, and she appeared to be gone on February 5, 1995, when her neighbor returned from a trip to pick up his dog which she had been taking care of. In addition, the neighbor noticed that certain items, such as a computer laser printer, fax machine and portable phone were missing from the house. Numerous items of personal property were later confirmed as missing from Powell’s house, including those identified by the neighbor, a 35 mm camera, a laptop computer, a CD player and her purse, checkbook and credit cards. Like Davila, Powell was known to be extremely reliable and consistent in her activities. She was very committed to her work and was never late or absent without notice. After February
 
 *959
 
 6, 1995, she never showed up again to school. She was formally reported missing on February 6, 1995.
 

 Powell’s body was found in a dumpster in Reno on February 11, 1995. She was naked except for a black shirt and two socks. She was tied hand and foot with a white braided rope and had a human bite mark on her left breast. Her body was wrapped in a sleeping bag and several black plastic garbage bags with silver warning labels. She was also wrapped in a large yellow storage bag with the label “Warps banana bag” on it. An autopsy failed to reveal a cause of death.
 

 Davila’s body was found in the desert near Verdi on April 9, 1995, nine months after she disappeared. Due to animal activity, her remains were scattered, and all that was left was a skull attached to several vertebrae and several long bones. Pieces of white braided rope were also found near the body. Davila was identified by her dental records.
 

 As part of the investigation into Powell’s death, police researched the availability of yellow “Warps” bags in Reno. They learned that only two stores in the Reno area sell the bags. Of those two, only one had a record of having sold any such bags, and that store had sold one box on February 8, 1995. The bags are packaged in boxes of three bags.
 

 Also as a result of the investigation into Powell’s death, police were alerted to a credit card transaction at The Good Guys store in which a person ordered a Yamaha stereo over the phone using Powell’s MasterCard. On February 6, 1995, a woman wearing a yellow windbreaker with a logo on it and driving a 1970’s red International Harvester pick-up truck picked up the stereo using her own red hand-cart. The same pick-up truck was later found near the TCI Cablevision offices. Police learned that the truck was registered to respondent, and that respondent had installed cable at Powell’s home on January 28, 1995. A search warrant was obtained for respondent’s apartment. Police were then informed through the secret witness program that Evonne Haley, respondent’s long-time girlfriend, rented a storage unit in Sparks. Investigation revealed that the unit was rented in the name of “Hal-Data Research” but was signed and paid for by respondent. On March 5, 1995, police obtained and served a warrant for the unit.
 

 In the unit police found Powell’s personal property identified as missing from her home. Also in the unit police found a yellow windbreaker with a logo, a red hand-cart and a Yamaha stereo. They found two blankets which appeared to be similar to those missing from Davila’s apartment, a black lace shirt similar to one of Davila’s and a hair-tie like one she had worn to work. (Evonne Haley testified that the blankets, lace shirt and hair-tie could have
 
 *960
 
 been hers.) In addition, police found a Halloween-type mask, webbing, bondage literature and photos, several foam and rubber balls and various types of personal restraints. They also found a Coleman cooler with handcuffs and bolts and several rolls of duct tape inside. In addition, the unit contained three guns (one of which was identified as Powell’s), a box of women’s lingerie, a tape titled “1992 Trust,” condoms, an earring hasp, a machete with a handle made of a dog’s skull with fangs and horns, a bat or club, at least one stun-gun or tazer, and a refrigerator with the internal shelves removed, the freezer section cut out and two small holes drilled through the top and back. The refrigerator contained blue cotton fibers matching those found on Powell’s body in the dumpster. A large speaker box wired with cables was attached to a pulley system in the ceiling, and hair was found in the speaker box. White braided rope similar to that used to tie Powell and Davila was found. The search also revealed black plastic garbage bags with silver warning labels similar to those found in the dumpster with Powell, and an open box containing two yellow “Warps” storage bags. Finally, a surveillance video taken by the storage company’s automatic cameras apparently reveals respondent and a woman appearing to be Ms. Haley moving a “large object. . . consistent with the packaging of Ms. Powell.” The record does not reflect the date of the video, or whether the “large object” was being moved into or out of the unit.
 

 Hair samples taken from the restraints were later identified by forensic experts as likely to have come from Powell; saliva found on one of the foam balls was determined to contain DNA consistent with Powell’s. Hair determined likely to be Davila’s hair was taken from the duct tape. Forensic experts also conducted tests on the ropes from the unit and both victims and concluded that the ropes used to tie Powell and found near Davila could be the same rope, and could also be the same as the rope found in the storage unit. However, no cause of death was established for either woman. The state did not offer any explanation for why no cause of death could be established, nor did it rule out any causes.
 

 On the basis of the evidence listed above, the justice’s court ordered respondent bound over for trial. On August 31, 1995, respondent filed his pretrial petition for a writ of habeas corpus. He contended that because the state’s evidence had not revealed any cause of death, the state had not shown that a crime had been committed and had not met its burden of establishing the corpus delicti of murder: death by a criminal agency. The district court held a hearing and denied the petition. The court stated that the circumstances of the disappearances and discoveries of the bodies
 
 *961
 
 provided sufficient evidence that the two women had died by criminal agency.
 

 However, in June of 1996, after reconsidering the petition in light of this court’s Opinion in
 
 Frutiger,
 
 the district court granted the petition. Thus, it appears that the district court interpreted
 
 Frutiger
 
 as changing or expanding Nevada’s law on the doctrine of corpus delicti.
 
 Frutiger
 
 is not intended to expand the corpus delicti rule as it has existed in this state — to the extent that it may be read to do so, we now take this opportunity to clarify and restate the parameters of proof of corpus delicti.
 

 As discussed in
 
 Frutiger,
 
 to establish probable cause to bind a defendant over for trial, the state must show that (1) a crime has been committed and (2) there is probable cause to believe the defendant committed it. NRS 172.155;
 
 Frutiger,
 
 111 Nev. at 1389, 907 P.2d at 160. To meet the first prong of this test, known as the corpus delicti, the state must demonstrate (1) the fact of death, and (2) that death occurred by a criminal agency.
 
 Frutiger,
 
 111 Nev. at 1389, 907 P.2d at 160; Azbill v. State, 84 Nev. 345, 350-51, 440 P.2d 1014, 1017 (1968). Here, as in
 
 Frutiger,
 
 the deaths of both women are conceded. The question is whether the state has met its burden of showing that those deaths were caused by the criminal agency of another.
 

 At trial, the state bears the burden of proving beyond a reasonable doubt the corpus delicti of the crime and that the defendant committed the crime.
 
 Frutiger,
 
 111 Nev. at 1390-91, 907 P.2d at 161;
 
 Azbill,
 
 84 Nev. at 352, 440 P.2d at 1018. However, at the preliminary hearing stage, probable cause to bind a defendant over for trial “may be based on ‘slight,’ even ‘marginal’ evidence because it does not involve a determination of guilt or innocence of an accused.” Sheriff v. Hodes, 96 Nev. 184, 186, 606 P.2d 178, 180 (1980) (citations omitted);
 
 see also
 
 Sheriff v. Milton, 109 Nev. 412, 414, 851 P.2d 417, 418 (1993) (the state need only present sufficient evidence “‘to support a reasonable inference that the accused committed the offense’”) (quoting Kinsey v. Sheriff, 87 Nev. 361, 363, 487 P.2d 340, 341 (1971)). The same standard applies to proof of the corpus delicti. In Graves v. Sheriff, 88 Nev. 436, 439, 498 P.2d 1324, 1326 (1972), this court stated that the state has the burden of showing a “reasonable inference” of death by criminal agency, such that a “person of ordinary caution and prudence [would] believe and conscientiously entertain a strong suspicion.”
 
 See also Frutiger,
 
 111 Nev. at 1390, 907 P.2d at 161;
 
 Azbill,
 
 84 Nev. at 352, 440 P.2d at 1018.
 
 *962
 
 Accordingly, we now clarify that at the preliminary hearing stage, the state’s burden with respect to the corpus delicti is the same as its burden to show probable cause. The state must present evidence supporting a “reasonable inference” of death by criminal agency.
 

 Although medical evidence as to the cause of death is often critical in establishing that a death occurred by criminal agency, there is no requirement that there be evidence of a specific cause of death. The state is required only to show a hypothesis that death occurred by criminal agency; it is not required to show a hypothesis of a specific cause of death.
 
 Azbill,
 
 84 Nev. at 352, 440 P.2d at 1019.
 

 Confessions and admissions of the defendant may not be used to establish corpus delicti absent sufficient independent evidence. Hooker v. Sheriff, 89 Nev. 89, 506 P.2d 1262 (1973). Once the state presents independent evidence that the offense has been committed, admissions and confessions may then be used to corroborate the independent proof. Myatt v. State, 101 Nev. 761, 763, 710 P.2d 720 (1985). However, all other relevant evidence may be considered. The corpus delicti may be established by purely direct evidence, partly direct and partly circumstantial evidence, or entirely circumstantial evidence.
 
 Hooker,
 
 89 Nev. at 92, 506 P.2d at 1263;
 
 Azbill,
 
 84 Nev. at 351, 440 P.2d at 1018.
 

 The showing of the corpus delicti is a threshold question. Before the state may prosecute a person for a crime, it must be able to establish probable cause that the crime has been committed. Evidence as to the corpus delicti should ideally be considered before and independently of evidence tending to establish probable cause that the defendant committed the crime. Thus, in Hicks v. Sheriff, 86 Nev. 67, 69, 464 P.2d 462, 464 (1970), this court observed that circumstantial evidence that the defendant was driving the victim’s car was not relevant to show the corpus delicti, but was only relevant to show probable cause that the defendant had committed the crime once the fact of the offense itself had been established. In
 
 Frutiger,
 
 this court cited
 
 Hicks
 
 and concluded that again, circumstantial evidence “connecting Frutiger with Poulter’s body” would be relevant to show probable cause that Frutiger committed the crime, but was not material to show that Poulter’s death had occurred by a criminal agency.
 
 Frutiger,
 
 111 Nev. at 1390, 907 P.2d at 161.
 

 However, these holdings should not be read to mean that evidence which may also be used to establish probable cause that
 
 *963
 
 the defendant committed the crime can never be used in determining the corpus delicti. As this court stated in
 
 Azbill:
 

 Technically, we suppose, if it were possible to conduct proceedings in such a precise manner, evidence should be offered first to prove the corpus delicti and only after that was established by lawful evidence of the proper degree should the state turn to the proof of probable cause. However, as any prosecutor, defense counsel or judge knows, it is often not practical to present evidence in such a manner.
 

 Thus, evidence and testimony on both points, corpus delicti and probable cause, comes in often, if not always, intermingled and without specific control as to which of the points it is offered to prove.
 

 As demonstrated by the cases reviewing whether corpus delicti was proved by evidence lawful for that purpose, the courts look at the entire record and without regard to the order in which it came in or that certain types of evidence may not be considered in proving corpus delicti (confessions for example) and hold that there was sufficient evidence to establish the corpus delicti independent of confessions and possibly admissions, but that the latter may then be used to corroborate or strengthen the proof of the corpus delicti.
 

 Azbill,
 
 84 Nev. at 351, 440 P.2d at 1018.
 

 Thus, each case must be decided on its own set of facts, and evidence considered in establishing the corpus delicti must be relevant to and probative on the question of the corpus delicti. NRS 48.025.
 
 [1]
 
 In
 
 Frutiger,
 
 this court concluded that evidence “connecting” Frutiger to the victim was not probative of death by criminal agency and was therefore not relevant to the question of the corpus delicti. More specifically, in cases such as
 
 Frutiger
 
 and
 
 Azbill,
 
 where there is medical evidence as to possible causes of death, the evidence of death by natural causes may rebut or outweigh an inference of death by criminal agency. At the preliminary hearing and on a pretrial petition challenging the probable cause determination, the court must conduct a balancing test of the relevant, probative evidence. If the court concludes that the evidence is “more susceptible of belief that the death was caused by a criminal agency” than by natural causes, accident or suicide, then the evidence as to corpus delicti is sufficient to bind the
 
 *964
 
 defendant over for trial. Sheriff v. Larsgaard, 96 Nev. 486, 489, 611 P.2d 625, 627 (1980). At trial, the jury must weigh all the relevant evidence presented, and must conclude that corpus delicti has been proved beyond a reasonable doubt.
 

 In the instant case, the district court determined that it was precluded from considering any and all evidence which would ultimately establish probable cause that respondent committed the crimes, including evidence regarding the disappearances of the women and the manner and locations in which their bodies were found. The court concluded that its review was limited to evidence of the bare conditions of the bodies themselves, and found that the bodies alone did not reveal death by criminal agency because they did not reveal anything, and therefore the state had not met its burden. This conclusion is not mandated by our decision in
 
 Frutiger.
 
 The court must consider and weigh all the evidence offered which bears on the question of death by criminal agency. In this case, the circumstances of the disappearances of the women, the discoveries of their bodies in remote locations, tied with rope, wrapped in garbage bags, bitten severely, clearly creates a reasonable inference of their deaths by criminal agency. Furthermore, unlike in
 
 Frutiger,
 
 where the weight of the available medical evidence indicated a likelihood of death by natural causes, in this case there is no evidence to rebut the inference of death by criminal agency. The district court erred in not considering at least the circumstances of the disappearances of the women and the discoveries of their bodies. There is ample evidence by those circumstances alone tending to prove that Powell and Davila died by a criminal agency.
 

 With respect to the question of the felony murder charges, we conclude, in view of our discussion above, that at the preliminary hearing, the state met its burden of proving a corpus delicti for the two felony counts of kidnapping and murder during the commission of a felony.
 

 We reverse the district court’s order granting respondent’s pretrial petition for a writ of habeas corpus, and we remand this matter to the district court for further proceedings.
 

 [1]
 

 To be admissible, evidence must be relevant. NRS 48.025(2). To be relevant, evidence must have “any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.” NRS 48.015.