SHERIFF, WASHOE COUNTY, APPELLANT, *v.* PARMJIT KAUR DHADDA, RESPONDENT.

No. 32564

July 22, 1999                                                    980 P.2d 1062

[Rehearing denied August 20, 1999]

[En banc reconsideration denied September 27, 1999]

*Frankie Sue Del Papa,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney, and *Terrence P. McCarthy,* Deputy District Attorney, Washoe County, for Appellant.

*Martin Wiener,* Reno, for Respondent.

Before YOUNG, SHEARING and LEAVITT, JJ.

## OPINION

*Per Curiam:*

Respondent Parmjit Kaur Dhadda was accused of first-degree kidnapping and first-degree murder in connection with the death of her four-month-old daughter, Amrit Kaur Dhadda, who drowned in the Truckee River. The district court granted respondent's pretrial petition for a writ of habeas corpus, concluding that the state failed to present sufficient evidence before the grand jury, independent of respondent's admissions and confessions, to establish the corpus delicti of the charged offenses. The district court then discharged respondent on both the indictment and a pending criminal complaint charging the same offenses. The state has appealed those orders.

### FACTS

Rupinderpal Dhadda (Rupinderpal) testified before the grand jury as follows. Parmjit Kaur Dhadda (Parmjit) came to the United States from India in 1995 as part of an arranged marriage to Rupinderpal. The couple's only child, Amrit, was born on January 25, 1997. Rupinderpal was shown a picture, which he identified as Parmjit and Amrit before she died. On May 12, 1997, Rupinderpal left for school at approximately 7:00 or 7:15 a.m. Parmjit and Amrit were asleep when Rupinderpal left the house. Amrit was in good health at the time. Rupinderpal returned home at 10:00 a.m. and no one was in the home that he shared with Amrit, Parmjit and his parents. There was a note written in Punjabi, Parmjit's native language, on top of the dresser. The note read: "Me and Amrit are leaving this house and this world forever. Yours, Parmjit and Amrit." Rupinderpal thought that Parmjit was trying to scare him. Rupinderpal called family members and went to Parmjit's place of employment, local stores and the bus station looking for Parmjit. Eventually he called the police and reported his wife and daughter missing.

David Bernardy, a detective sergeant with the City of Reno Police Department, testified as follows. At approximately 1:00 p.m. on May 12, 1997, Bernardy responded to a report that a baby had been lost in the Truckee River. Bernardy encountered Parmjit at the river. Parmjit claimed to be the lost child's mother and said that she had entered the river with the child in order to wash her and that the current had swept the child away. Parmjit directed Bernardy to the area along the riverbank where she lost the child. Bernardy observed a towel and blanket in the area. In about twenty to thirty minutes searchers found the body of a child, who appeared to be three months old, approximately 140 yards down river from the location Parmjit had indicated. Bernardy identified the child as the same as one in a photograph shown to him at the grand jury. The child was wearing a diaper and a sleeper when found.

Mohammed Rafaqat, a detective with the Reno Police Department, testified as follows. Rafaqat interviewed Parmjit at the police station on the day the body was found, communicating in the Punjabi dialect. He advised her that she was not in custody and that she was free to leave if she wished. She indicated that she wished to proceed with the interview. Parmjit first told Rafaqat that she was feeding Amrit some milk while sitting on the riverbank. When some of the milk dried around Amrit's mouth, she waded into the river with Amrit to wipe the milk off her face. While in the water a strong current swept Amrit away. Later, Parmjit admitted writing the note and told Rafaqat that she went to the river to commit suicide and take Amrit with her. She said she stepped into the river with Amrit with the intent that they both be swept away by the current, but she changed her mind as she prepared to step into the rapid current. She bent down to scoop up some water to wash Amrit's face, but a strong current came and knocked Amrit out of her hand and knocked her into the water. She said she was in the water for half an hour and then spent several hours trying to find her daughter along the river without seeking help. Rafaqat observed that Parmjit's outer clothing was not wet, but her money and a handkerchief in her brassiere appeared damp.

Parmjit also told Rafaqat that she and Rupinderpal had a fight the previous day and that Rupinderpal threatened to divorce her and said that he was going to consult an attorney. Parmjit was upset over this possibility and did not want to return to India or continue living anymore. The reason she planned to take her daughter with her if she killed herself was that she did not want her daughter to grow up listening to insults from family members about her mother.

Both Rupinderpal and Rafaqat were asked about ritual bathing

in the river in India. Both witnesses were aware of the practice, but neither was familiar with the details. Rafaqat testified that he was aware of ritual washings in rivers as part of the Hindu religion, but he believed that such washings were usually a "family event." Rupinderpal testified that Parmjit is a very religious member of the Sikh religion. He further testified that he and Parmjit always bathed Amrit at home in the bathtub and that Amrit was never clothed when she was bathed. He also testified that he never knew Parmjit to wash Amrit in the river or elsewhere outside of the home.

At the conclusion of the hearing, the grand jury returned a true bill on both the charges of first degree kidnapping and first degree murder. On the same day, the district court stayed any further proceedings on a criminal complaint charging the same offenses, which had been filed before the state obtained the indictment.

Parmjit moved to suppress the statements she made to the police. The district court found that the questioning of Parmjit at the police station was a custodial interrogation and that Parmjit "had not made a knowing and voluntary waiver of her Fifth Amendment rights." The district court suppressed all statements Parmjit made to the police at the police station, including all statements made before and after the *Miranda* warnings were given.

Subsequently, Parmjit filed a pretrial petition for a writ of habeas corpus, alleging that the legally competent and admissible evidence presented to the grand jury was insufficient to charge her with the offenses set forth in the indictment. The district court conducted a hearing on the petition and subsequently granted it. The court found "that insufficient evidence, independent of the statements of the defendant, was presented to the grand jury to establish the death of Amrit Kaur Dhadda by criminal agency." The district court entered an order discharging and releasing Parmjit from custody.

Thereafter, a question arose as to whether the district court's order granting the petition for habeas corpus precluded Parmjit's continued detention on the still-pending criminal complaint in justice's court. The court conducted a hearing on the matter and filed an amended order discharging and releasing Parmjit from custody on the indictment and on the criminal complaint. The state appeals from the order granting the habeas petition and the amended order discharging Parmjit on the indictment and the complaint.

## DISCUSSION

*Grand Jury Indictment*

The grand jury's duty is to determine whether there is proba-

ble cause to believe (1) that a crime has been committed, and (2) that the defendant committed the crime. NRS 172.155(1). The determination that a crime has been committed is known as the corpus delicti. In order to establish the corpus delicti in a murder case, the state must show (1) the fact of death, and (2) that death occurred through the criminal agency of another. Sheriff v. Middleton, 112 Nev. 956, 961, 921 P.2d 282, 285 (1996). The fact of death in this case is conceded. Amrit died by drowning. Since Amrit was three months old at the time of her death and she drowned in the Truckee River, it is therefore clear that her death was not of her own doing. Thus, the question presented is whether there was evidence that the death was caused by someone else so as to constitute a crime.

In habeas corpus proceedings brought by one indicted in a crime, the court can only inquire into whether there exists any substantial evidence which, if true, would support a verdict of conviction. Ex Parte Stearns, 68 Nev. 155, 159, 227 P.2d 971, 973 (1951), *overruled in part on other grounds by* Shelby v. District Court, 82 Nev. 213, 418 P.2d 132 (1966). The court may not resolve a substantial conflict in the evidence because that is the exclusive function of the jury. *Id.* In assessing whether there is sufficient independent evidence of the corpus delicti, a reviewing court should assume the truth of the state's evidence and all reasonable inferences from it in a light most favorable to the state. *See* State v. Aten, 927 P.2d 210, 219 (Wash. 1996). Probable cause to bind a defendant over for trial may be based on slight, even marginal, evidence because it does not involve a determination of guilt or innocence of an accused. *Middleton,* 112 Nev. at 961, 920 P.2d at 286. In Graves v. Sheriff, 88 Nev. 436, 438, 498 P.2d 1324, 1326 (1972), this court stated:

> Probable cause requires that the evidence be weighed toward guilt, though there may be room for doubt. The facts must be such as would lead a person of ordinary caution and prudence to believe and conscientiously entertain a strong suspicion.

The same standard that applies to probable cause for guilt applies to proof of the corpus delicti. *Middleton,* 112 Nev. at 961-62, 920 P.2d at 285.

The first question to be determined is what evidence may be considered in determining whether the corpus delicti has been shown. It has long been established that the corpus delicti must be demonstrated by evidence independent of the confessions or

admissions of the defendant. *Id.* at 962, 920 P.2d at 286; In Re Kelly, 28 Nev. 491, 498, 83 P. 223, 225 (1905). This rule protects against an accused's conviction being based solely upon an uncorroborated confession. Domingues v. State, 112 Nev. 683, 692, 917 P.2d 1364, 1371 (1996). The rule arose from judicial distrust of confessions and admissions generally, combined with the recognition that juries are likely to accept such statements uncritically. City of Bremerton v. Corbett, 723 P.2d 1135, 1139 (Wash. 1986), *limited on other grounds by Aten,* 927 P.2d at 220-21. The distrust of confessions stems from the possibility that they may have been misreported or misconstrued, elicited by force or coercion, based on mistaken perception of the facts or law, or falsely given by a mentally disturbed individual. *Id.* Thus, none of the statements made by Parmjit to the police may be considered in determining whether Amrit's death was intentionally caused, even those statements which were not suppressed by the district court.[1]

However, the note Parmjit left before Amrit's death may be considered. The rationale for excluding post-crime admissions does not apply to pre-crime admissions. As the United States Supreme Court explained in Warszower v. United States, 312 U.S. 342, 347 (1941):

---

[1]The federal courts no longer require independent proof of the corpus delicti alone. In Opper v. United States, 348 U.S. 84, 93 (1954), the United States Supreme Court resolved a conflict in the circuits, holding that the better rule is that there must be substantial independent evidence which would tend to establish the trustworthiness of the defendant's statements; corroborative evidence need not be sufficient, independent of the defendant's statements, to establish the corpus delicti. The court in U.S. v. Kerley, 838 F.2d 932, 939 (7th Cir. 1988), stated the rationale for abandoning the corpus delicti rule as follows:

> The rule is a vestige of a time when brutal methods were commonly used to extract confessions, sometimes to crimes that had not been committed.

Although there is a growing trend toward abandoning the corpus delicti rule, Nevada still maintains it. Commentators have generally agreed that the corpus delicti rule is no longer needed since the development of other confession law doctrines, especially Fifth Amendment protections. *See* C. McCormick, *Evidence* § 145 (4th ed. 1992); J. Terry Schwartz, *California's Corpus Delicti Rule: The Case for Review and Clarification,* 20 UCLA L. Rev. 1055 (1973) (rule is ineffective in preventing convictions on false testimony and "pragmatic scrutiny" indicates it should be abolished); Julian S. Millstein, Note, *Confession Corroboration in New York: A Replacement for the Corpus Delicti Rule,* 46 Fordham L. Rev. 1205, 1235 (1978) (rule is duplicative of other confession doctrines); Developments in the Law— *Confessions,* 79 Harv. L. Rev. 938, 1084 (1966) ("serious consideration should be given to elimination of the corpus delicti requirement").

> The rule requiring corroboration of confessions protects the·administration of the criminal law against errors in convictions based upon untrue confessions alone. Where the statement was made prior to the crime this danger does not exist. Therefore we are of the view that such admissions do not need to be corroborated. They contain none of the inherent weaknesses of confessions or admissions after the fact.

(Footnote omitted.)

Based upon where both Parmjit and Amrit were found, the inference can certainly be made that Parmjit took Amrit to the river. However, her intent in doing so is the issue to be determined. The note Rupinderpal found is virtually the only independent evidence of Parmjit's intent to harm Amrit. The district court found that there was insufficient evidence, independent of the statements of the defendant, to establish the death of Amrit by criminal agency. The district judge did not indicate whether he considered the note Parmjit wrote before Amrit's death in making that finding. We hold that the note Parmjit wrote before Amrit's death may be considered in determining the existence of the corpus delicti. Therefore, we must analyze the evidence considering the note.

In this case, the evidence supporting the indictment includes the following: When Rupinderpal left for school on the morning of May 12, 1997, Parmjit and Amrit were at home and Amrit was in good health. Upon returning from school several hours later, Rupinderpal found that Parmjit and Amrit were not at home, but that Parmjit had left a note in her native language informing Rupinderpal that she and Amrit were "leaving this house and this world forever." A fair interpretation of the note is that Parmjit intended to kill herself and Amrit. Several hours after Rupinderpal returned home, police responded to a call that a child had been lost in the Truckee River. The river was running in a very swift and swollen condition. Police found Parmjit at the Truckee River. She was upset. The body of a three-to-four-month-old child was located in the river approximately 140 yards from where Parmjit was found with a baby blanket. The child was fully clothed. There were no signs of traumatic injury, and the appearance of the child's body was consistent with a drowning.

Applying the applicable standards, we conclude that this evidence would lead a person of ordinary caution and prudence to believe and conscientiously entertain a strong suspicion that Amrit's death was intentionally caused. We therefore conclude that the state presented sufficient independent evidence of the corpus delicti to support the indictment.

Considering the evidence of the corpus delicti in conjunction with Parmjit's statements at the river, we find that there was sufficient evidence to sustain the indictment for first degree murder against Parmjit, even without the statements she made at the police station.

We also conclude that the evidence discussed above is sufficient evidence to support a reasonable inference that the crime of first-degree kidnapping was committed. The state demonstrated that there is probable cause to believe that Parmjit took Amrit to the river for the purpose of killing her or inflicting substantial bodily harm upon her. NRS 200.310(1).

*Dismissal of the Criminal Complaint*

As previously mentioned, the state initially proceeded against Parmjit by means of a criminal complaint filed in justice's court. However, before the scheduled preliminary hearing, the state presented the case to a grand jury and obtained the indictment. When the district court accepted the indictment, it stayed any further proceedings on the criminal complaint pending final determination of the indictment. After granting the pretrial habeas corpus petition and discharging Parmjit on the indictment, the district court determined that the indictment superseded and supplanted the state's prerogative to proceed by way of preliminary examination. The court reasoned that, ''a necessary consequence of the Court's granting of the Petition for Habeas Corpus Relief in this case is discharge of the petitioner not only from the custody under the case number of the District Court action, but also the Justice's Court action, because the Court concludes that the Indictment in this case superseded and supplanted the State's prerogative to proceed by way of preliminary examination.'' We disagree with this reasoning.

While ordinarily the state dismisses a criminal complaint when an indictment is returned, such a dismissal is not automatic upon return of an indictment. There is no authority for the proposition that an indictment obtained while a criminal complaint is pending automatically replaces the complaint. On the contrary, this court has consistently held that there is no jurisdictional defect in dual proceedings against an accused consisting of a grand jury indictment for the same offense which has been previously charged in a pending complaint or information. Turpin v. Sheriff, 87 Nev. 236, 238, 484 P.2d 1083, 1084-85 (1971). Two indictments may be outstanding at the same time for the same offense as long as

jeopardy has not attached. United States v. Del Vecchio, 707 F.2d 1214, 1216 (11th Cir. 1983). Although maintaining dual proceedings against an accused could be an abuse of the state's power, we conclude that no such abuse is indicated here. Neither the indictment nor the order granting the writ of habeas corpus as to the indictment automatically extinguished the pending criminal complaint.

## CONCLUSION

We reverse the district court's order granting the pretrial petition for a writ of habeas corpus and the district court's amended order discharging respondent on the indictment and the criminal complaint, and we remand this matter to the district court for further proceedings.[2]

---

[2]On November 3, 1998, respondent filed a motion for permission to supplement her response to the docketing statement. We deny the motion as moot.