INMER MEJIA, APPELLANT, v.
THE STATE OF NEVADA, RESPONDENT.

No. 43833

May 25, 2006                                        134 P.3d 722

---

*Law Offices of Amy Chelini* and *Amy P. Chelini*, Las Vegas, for Appellant.

*George Chanos*, Attorney General, Carson City; *David J. Roger*, District Attorney, and *James Tufteland*, Chief Deputy District Attorney, Clark County, for Respondent.

Before MAUPIN, GIBBONS and HARDESTY, JJ.

## OPINION

By the Court, GIBBONS, J.:

In this case, we consider a number of issues including whether a social worker's interview requires that *Miranda*[1] warnings be given. We conclude that *Miranda*-like warnings are not required because conditioning a child custody placement recommendation upon honest answers to a social worker's questions does not cut off an individual's free choice to exercise the right to remain silent.

### FACTS

Appellant Inmer Mejia and the victims' mother were married in early 2003. After the wedding, Mejia moved in with the mother and her two daughters from a prior marriage, A.W., then 13 years old, and R.W., then 12 years old. Evidence unequivocally demonstrated that within approximately one month, Mejia began molesting both girls.

A.W. testified to numerous incidents in which Mejia fondled her buttocks, breasts and genital area, as well as one incident where Mejia bit one of her breasts. R.W. testified to separate incidents in which Mejia forcibly fondled her breasts. Both testified to the fears of physical retribution by Mejia.

According to A.W., she eventually told her mother that Mejia had been molesting both A.W. and R.W. and showed her the bruise on her breast. Their mother then contacted Child Protective Services (CPS), which began its own investigation.

CPS social worker Natalie Guesman was assigned to the case. Guesman testified at trial that she interviewed the children and determined that their allegations were credible. Based on that finding, Guesman removed them from the home until Mejia could find another place to live. As part of her investigation, Guesman spoke with Mejia twice. During the first conversation, Mejia denied all wrongdoing and said that the children were lying. During the second meeting, Mejia admitted to touching A.W.'s genital area

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

through her clothes but stated that he could not remember doing anything else inappropriate.

The State filed an information charging Mejia with one count of sexual assault against a minor under 14 years of age and five counts of lewdness with a minor under 14 years of age for the incidents involving A.W. The State also charged Mejia with two counts of lewdness with a minor under 14 years of age for the incidents involving R.W. Following a three-day trial, the jury convicted Mejia on all eight counts. The district court sentenced Mejia to two concurrent terms of life imprisonment with the possibility of parole in twenty years for sexual assault and to concurrent terms of life imprisonment with the possibility of parole in ten years for each count of lewdness. This timely appeal followed.

## DISCUSSION

### Miranda warnings

Mejia argues that Guesman should have given him *Miranda* warnings before speaking to him about the alleged sexual abuse of A.W. and R.W.[2] Since no *Miranda* warnings were given, Mejia alleges that his statements to Guesman were inadmissible at trial. We disagree.

Mejia did not object to admission of his statements to Guesman at trial. However, because the *Miranda* issue is an important one briefed by the parties, we will review the admission of Mejia's statements for plain error.[3] "In conducting plain error review, we must examine whether there was 'error,' whether the error was 'plain' or clear, and whether the error affected the defendant's substantial rights."[4]

Under *Miranda*, a criminal defendant must be warned that he has the right to remain silent and to the assistance of counsel before he can be subjected to custodial interrogation.[5] Custodial interrogation is defined as " 'questioning initiated by law enforcement officers after a person has been taken into custody or

---

[2]*See* NRS 432B.220(1), (3)(e) (providing that a social worker who "knows or has reasonable cause to believe that a child has been abused" must report the abuse to the proper authority).

[3]*Kaczmarek v. State*, 120 Nev. 314, 328, 91 P.3d 16, 26 (2004).

[4]*Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003).

[5]384 U.S. at 467-68; *Holyfield v. State*, 101 Nev. 793, 797, 711 P.2d 834, 836-37 (1985), *abrogated in part on other grounds as recognized by Boehm v. State*, 113 Nev. 910, 913 n.1, 944 P.2d 269, 271 n.1 (1997).

otherwise deprived of his freedom of action in any significant way.'"[6]

Mejia argues that his statement to Guesman, although not made during a custodial interrogation by a law enforcement officer, was nonetheless compelled in violation of his Fifth Amendment privilege against self-incrimination. He suggests that his failure to assert the privilege at the time of the interview is excused because he was told that his family would not be reunited unless he made an admission. Such a statement by a social worker to an accused abuser, Mejia contends, is tantamount to extortion, thus warranting a "*Miranda*-like" warning. He relies on *Minnesota v. Murphy* to support this proposition.[7]

Mejia's reliance on *Murphy* is misplaced. Mr. Murphy was on probation for a sex-related charge. The terms of his probation required him to report to a probation officer periodically and be truthful with the officer in all matters. At a meeting with the officer, Murphy admitted that he had committed a rape and murder not related to his probation. The United States Supreme Court concluded that Murphy was not in custody for purposes of receiving *Miranda* protection since there was no formal arrest or restraint on freedom of movement of the degree associated with formal arrest. The United States Supreme Court further concluded that Murphy was free to claim the privilege against self-incrimination.[8]

In this case, Guesman testified that she could not reunify families after a sexual abuse unless all parties are completely honest. Guesman further testified that she found A.W. and R.W. to be credible and believed that they had been abused. Thus, she could not place them back into a home with Mejia until he admitted that he had a problem and sought help. After Mejia admitted to touching A.W.'s genital area, Guesman referred him to counseling. Guesman testified that the goal of counseling is to reunify the family.

Guesman's interview with Mejia did not constitute "extortion" that was designed to compel Mejia to incriminate himself. Rather, Guesman's testimony indicates that she was attempting, if possible, to reunite the family. Under these circumstances, Mejia's admission does not implicate *Miranda*.

*Inadmissibility of statements due to a language barrier*

Mejia argues that his statement was inadmissible since it was a product of an "acknowledged" language barrier between Mejia

---

[6]*Holyfield*, 101 Nev. at 797, 711 P.2d at 836 (quoting *Miranda*, 384 U.S. at 478).

[7]465 U.S. 420 (1984).

[8]*Id.* at 426.

and Guesman. Mejia attempts to analogize to several cases that have applied *Miranda* to require law enforcement agents to give warnings in the defendant's native language if the defendant does not speak English. Because we conclude that Mejia was not entitled to *Miranda* warnings, we need not consider whether such warnings should have been given in his native language.

## Competence of child witnesses

Mejia argues that the district court abused its discretion by finding A.W. competent to testify as a child witness.[9] Specifically, Mejia argues that inconsistencies in A.W.'s testimony indicate that she was coached and that her testimony was false.[10] Mejia did not request a voir dire examination of A.W. before she testified at trial, nor did he object at or before trial to A.W.'s competency. Because Mejia failed to properly preserve the issue of A.W.'s competence to testify as a child witness, we decline to consider it on appeal.[11]

## Sufficiency of the evidence

Mejia argues that there was insufficient evidence presented at trial to sustain a sexual assault conviction because the State failed to prove penetration. We disagree.

"Insufficiency of the evidence occurs where the prosecution has not produced a minimum threshold of evidence upon which a conviction may be based."[12] In determining the sufficiency of the evidence below, the critical question is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "[13]

---

[9]R.W. also testified and was age 13 at the time of the trial. However, Mejia does not challenge R.W.'s testimony.

[10]Mejia also argues that his trial counsel was ineffective for failing to call an expert witness to testify as to witness coaching in child sexual assault cases. Such claims should be raised in a post-conviction habeas petition, not on direct appeal. *Pellegrini v. State*, 117 Nev. 860, 882, 34 P.3d 519, 534 (2001). Thus, we have not considered this argument.

[11]*See Griego v. State*, 111 Nev. 444, 448, 893 P.2d 995, 998 (1995), *abrogated in part on other grounds as recognized by Koerschner v. State*, 116 Nev. 1111, 13 P.3d 451 (2000).

[12]*State v. Walker*, 109 Nev. 683, 685, 857 P.2d 1, 2 (1993).

[13]*Koza v. State*, 100 Nev. 245, 250, 681 P.2d 44, 47 (1984) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Mejia was convicted of sexual assault for performing cunnilingus on A.W. NRS 200.366(1) defines sexual assault as engaging in an act of sexual penetration against the victim's will. NRS 200.364(2), which defines sexual penetration, specifically enumerates cunnilingus as an act of sexual penetration. Consistent with that definition of sexual penetration, we have held that "even if it were only shown that [the defendant] had placed his tongue on and not in the victim's vagina without her consent, this constituted sufficient evidence to sustain a conviction for sexual assault."[14]

A.W.'s testimony that Mejia performed oral sex on her against her will was sufficient for a reasonable jury to conclude, beyond a reasonable doubt, that Mejia was guilty of sexual assault against a minor under 14 years of age.[15]

*Error in the judgment of conviction*

The judgment of conviction incorrectly states that Mejia was convicted pursuant to a guilty plea. Since Mejia was convicted pursuant to a jury verdict, we must remand the case for correction of the judgment of conviction.

## CONCLUSION

The district court did not err by allowing Mejia's admissions into evidence because he was not entitled to *Miranda* warnings from CPS social worker Natalie Guesman. In addition, Mejia failed to properly preserve the issue of A.W.'s competence to testify. Finally, the State presented sufficient evidence for a reasonable jury to conclude, beyond a reasonable doubt, that Mejia committed sexual assault. Accordingly, we affirm the judgment of conviction. However, we remand for further proceedings to correct the judgment to reflect that Mejia was convicted by jury verdict.

MAUPIN and HARDESTY, JJ., concur.

---

[14]*Hutchins v. State*, 110 Nev. 103, 110, 867 P.2d 1136, 1141 (1994).

[15]*See LaPierre v. State*, 108 Nev. 528, 531, 836 P.2d 56, 58 (1992) (explaining that this court has "repeatedly held that the testimony of a sexual assault victim alone is sufficient to uphold a conviction" so long as the victim testifies with "*some* particularity regarding the incident").