LUQRIS THOMPSON, Appellant, v.
THE STATE OF NEVADA, Respondent.

No. 51162

December 10, 2009

221 P.3d 708

[Rehearing denied February 16, 2010]

*Ciciliano & Associates, LLC*, and *G. Luke Ciciliano*, Las Vegas, for Appellant.

*Catherine Cortez Masto*, Attorney General, Carson City; *David J. Roger*, District Attorney, *Steven S. Owens*, Chief Deputy District Attorney, and *Peggy M. Samples*, Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, SAITTA, J.:

In this appeal, we consider whether the State's election to dismiss one of two charging documents and to proceed on the other constitutes "another prosecution" under NRS 178.562(1). Specifically, we address whether the 1997 amendment to NRS 178.562(1) affects our holding in *Turpin v. Sheriff*, 87 Nev. 236, 484 P.2d 1083 (1971). We hold that it does not and conclude that neither this issue, nor the other issues that appellant Luqris Thompson raises on appeal, warrants reversal of Thompson's conviction and sentence. Therefore, we affirm the judgment of conviction.

### FACTS AND PROCEDURAL HISTORY

Renee Coppola returned to her apartment one night, parked her car, and retrieved some bags from the back seat. With the back door still open, Coppola turned around with her bags and saw two men standing in front of her—one of the men was later identified as Thompson. Thompson grabbed Coppola and pushed her back into the car. Struggling against him, Coppola managed to escape and ran to a post that she clung to as Thompson and the other assailant forcibly pulled her off and pushed her back into the car. Hearing one of the men ask for her keys, Coppola threw the keys and her purse onto the floor of the car. The other assailant tried to start the car as Thompson lay on top of Coppola in the back seat. Coppola continued struggling and managed to exit the car and escape.

After escaping, Coppola ran to a neighbor's apartment and someone called 911. Coppola spoke to the police and completed a voluntary statement in which she described the attack and her assailants. That night, Coppola used the special training that she had learned as an art student to help her remember Thompson's appearance.

Thompson was arrested, and the State charged him by criminal complaint with conspiracy to commit a crime, burglary, robbery,

first-degree kidnapping, and attempted grand larceny auto. A preliminary hearing was held; Thompson was bound over on the charges, and an information was filed in the district court. Shortly thereafter, the State presented the case before a grand jury, which ultimately returned an indictment against Thompson for the same crimes as charged in the pending information.

Upon obtaining the grand jury indictment, the State moved to dismiss the information. The district court granted the State's motion in a minute order. Thompson then moved to dismiss the indictment. A hearing on the motion was held and, without citing authority, the district court denied the motion.[1]

Thompson also moved to preclude Coppola from identifying him as her assailant at trial. The district court denied Thompson's motion.[2] At trial, Coppola testified that 19 days after the attack, the police showed her three photographic lineups. She identified Thompson from the third lineup. While Coppola testified that she had only been 90 percent certain she had identified the correct man when she viewed the photographic lineup, she was 100 percent sure at the time of trial. Over Thompson's objection, Coppola also testified about the artist techniques that she had used to recall his appearance. Additionally, Coppola testified about the injuries she suffered in the attack, and photographs of her injuries were admitted.

Further, security guard Elven Bailey testified that he was on duty at Coppola's apartment complex the night of the attack. Bailey testified that he saw two African-American men, one of whom he identified at trial as Thompson, walking towards the back of the complex just before the attack.

The jury found Thompson guilty on all counts, and the district court sentenced him to prison terms of 18 to 48 months for conspiracy to commit a crime, 24 to 84 months for burglary, 48 to 120 months for robbery, 5 to 15 years for first-degree kidnapping, and 12 to 48 months for attempted grand larceny auto, with the conspiracy to commit a crime and first-degree kidnapping sentences to run consecutively and the remaining sentences to run concurrently. This appeal followed.

## DISCUSSION

On appeal, Thompson raises five issues. He asserts that NRS 178.562(1) barred the State from prosecuting him under the grand jury indictment, and therefore, the district court erred in denying his

---

[1]Judge Joseph T. Bonaventure signed Thompson's judgment of conviction; however, Judge Lee A. Gates signed the order denying Thompson's motion to dismiss.

[2]Judge Lee A. Gates also signed the order denying Thompson's motion to suppress identification.

motion to dismiss the indictment. Thompson further contends that the district court abused its discretion in denying his motion to suppress Coppola's pretrial photographic identification. Additionally, he argues that the district court abused its discretion when it allowed Coppola to testify regarding the artist techniques she used to remember his appearance. Thompson also asserts that the district court abused its discretion when it admitted photographs of Coppola's injuries. Lastly, Thompson contends that the State presented insufficient evidence at trial to support the verdict. We address each contention in turn.

*NRS 178.562*

Thompson argues that NRS 178.562(1) precluded the State from proceeding on the grand jury indictment after the information was dismissed. We disagree.

Because the issue of whether NRS 178.562(1) precluded the State from prosecuting Thompson under the grand jury indictment is purely a legal question, we review it de novo. *See Camacho v. State*, 119 Nev. 395, 399, 75 P.3d 370, 373 (2003).

In Nevada, a criminal prosecution may be commenced by criminal complaint, which results in the filing of an information if the defendant is bound over for trial after a preliminary hearing, or by grand jury indictment. NRS 173.015. This court has repeatedly held that "there is no jurisdictional defect in dual proceedings against an accused consisting of a grand jury indictment for the same offense which has been previously charged in a pending complaint or information." *Sheriff v. Dhadda*, 115 Nev. 175, 183, 980 P.2d 1062, 1067 (1999). Further, as a general matter, there is no "prejudice to an accused when one of two pending vehicles for prosecution is dismissed, leaving him accused by only one." *Turpin v. Sheriff*, 87 Nev. 236, 238, 484 P.2d 1083, 1085 (1971). The question presented in *Turpin*, and again in this case, is whether NRS 178.562(1) precludes the State from prosecuting a defendant when it has elected between two pending forms of prosecution and dismissed the one under which it has elected not to prosecute.

NRS 178.562(1) states: "[e]xcept as otherwise provided in NRS 174.085,[3] an order for the dismissal of the action, as provided in

---

[3]NRS 174.085 governs, among other things, the effect of a voluntary dismissal and states that "[a]fter the arrest or incarceration of the defendant, the prosecuting attorney may voluntarily dismiss an indictment or information without prejudice to the right to bring another indictment or information only upon good cause shown to the court and upon written findings and a court order to that effect." NRS 174.085(7).

NRS 178.554[4] and 178.556,[5] is a bar to another prosecution for the same offense.'' The exception under NRS 174.085 in NRS 178.562 was added to the statute in 1997. *See* 1997 Nev. Stat., ch. 504, § 2, at 2393. Although NRS 178.562(1) was amended in 1997, after our 1971 decision in *Turpin*, we conclude that this amendment does not affect our holding in *Turpin*, which is the only Nevada case expressly discussing NRS 178.562(1).

In *Turpin*, the defendant was first charged by criminal complaint and the State filed an information following the preliminary hearing. 87 Nev. at 237, 484 P.2d at 1084. The State also obtained an indictment from a grand jury. *Id.* The State elected to proceed solely on the grand jury indictment and moved to dismiss the information, which the district court did. *Id.* at 237-38, 484 P.2d at 1084. This court held that ''the state's election to proceed on one of two pending and viable forms of prosecution, and its dismissal of the proceeding under which it has elected not to prosecute, is not in violation of the provisions of NRS 178.562(1).'' *Id.* at 238, 484 P.2d at 1085. In contrast, this court observed that because the indictment on which the State chose to proceed did not include one of the charges that had been in the information, ''[t]he dismissal of the information without another pending vehicle for the prosecution [of that charge], runs afoul of the provisions of NRS 178.562(1), and bars further prosecution of the [defendant] on that charge.'' *Id.* at 238-39 n.4, 484 P.2d at 1085 n.4. Therefore, the key to *Turpin* was that the term ''another prosecution for the same offense'' in NRS 178.562(1) addressed only *subsequent* prosecutions for the same offense, and thus the State's dismissal of the information while there was another pending vehicle for prosecution of those offenses did not run afoul of NRS 178.562(1). *See id.* at 238, 484 P.2d at 1085.

The 1997 amendment to NRS 178.562(1) did not affect the ''another prosecution for the same offense'' language. *See* 1997 Nev. Stat., ch. 504, § 2, at 2393. Rather, the amendment identified NRS 174.085 as an *exception* to the bar against another prosecution for the same offense following dismissal of an action where there is no other information or indictment pending for that offense. Therefore, we conclude that our holding in *Turpin* remains: dual proceedings for the same offenses are proper, and the State may elect to proceed on one of two pending proceedings and dismiss the proceeding under which it has elected not to prosecute without running afoul of NRS 178.562(1). *See Turpin*, 87 Nev. at 237, 484 P.2d at 1085; *Dhadda*, 115 Nev. at 183-84, 980 P.2d at 1067. In this case, just as

---

[4]NRS 178.554 allows the State to dismiss a criminal complaint or indictment at any time prior to trial.

[5]NRS 178.556 permits a court to dismiss an indictment, information, or criminal complaint for unnecessary delay.

in *Turpin*, there were two proceedings pending against Thompson for the same offenses when the State moved to voluntarily dismiss the information. By choosing to pursue the grand jury indictment, the State was not bringing another prosecution following dismissal of an action. Thus, the State did not violate NRS 178.562(1). Further, because the State's election to pursue the grand jury indictment did not constitute "another prosecution" pursuant to NRS 178.562(1), the State did not need to show "good cause" to proceed on the indictment or obtain written findings and a court order permitting it to do so because NRS 174.085 was not triggered. Therefore, we conclude that the district court acted properly when it denied Thompson's motion to dismiss the indictment.

*Motion to suppress identification*

Thompson argues that Coppola's in-court identification of him was impermissibly tainted by her earlier identification at the photographic lineup. He asserts that the district court abused its discretion when it denied his motion to suppress identification because the photographic lineup procedure was unnecessarily suggestive and because Coppola's identification was unreliable. We conclude that Thompson's arguments fail.

In reviewing the propriety of a pretrial identification, this court considers "(1) whether the procedure is unnecessarily suggestive, and (2) if so, whether, under all the circumstances, the identification is reliable despite an unnecessarily suggestive identification procedure." *Bias v. State*, 105 Nev. 869, 871, 784 P.2d 963, 964 (1989). A photographic lineup is suggestive if, given the totality of the circumstances, the "procedure was 'so unduly prejudicial as [fatally to] taint [the defendant's] conviction.' . . . [A] photographic identification must be set aside 'only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Cunningham v. State*, 113 Nev. 897, 904, 944 P.2d 261, 265 (1997) (second alteration in original) (quoting *Simmons v. United States*, 390 U.S. 377, 383-84 (1968)).

We conclude that the photographic lineup was not impermissibly suggestive. In her voluntary statement to the police immediately following the attack, Coppola described the taller assailant, later identified as Thompson, as an African-American man in his late twenties or early thirties with light brown skin, short hair, and wearing a fitted white T-shirt. In the photographic lineup containing Thompson's picture, the men were all African-American, had similarly shaped faces and short hair, appeared to be approximately the same age, and Thompson and one other man were wearing white T-shirts.

The background on Thompson's picture also had the same lighting as the background for the other man wearing a white T-shirt. Because the photographic lineup consisted of individuals who all matched Coppola's general description of her assailant, we conclude that it was not impermissibly suggestive. *See Odoms v. State*, 102 Nev. 27, 31, 714 P.2d 568, 570 (1986). Thus, the photographic lineup did not make it substantially likely that Coppola would identify the wrong man. *See Cunningham*, 113 Nev. at 904, 944 P.2d at 265.

Because we conclude that the photographic lineup was not impermissibly suggestive, it is unnecessary for us to consider whether Coppola's in-court identification was reliable. *See Bias*, 105 Nev. at 871, 784 P.2d at 964. Nevertheless, we note that there is no indication that Coppola's in-court identification was unreliable. Therefore, we hold that there was no error in allowing Coppola to identify Thompson in court.

## Evidentiary issues

Thompson raises two arguments concerning the evidence allowed at trial. First, he contends that the district court abused its discretion when it allowed Coppola to testify about the artist techniques she used to remember his appearance. Next, he asserts that the district court abused its discretion when it admitted photographs of Coppola's injuries. We address each in turn and conclude that Thompson's arguments lack merit.

### Coppola's testimony

Thompson contends that the district court abused its discretion by allowing Coppola to give expert testimony as a lay witness. We conclude that there was no abuse of discretion.

In Nevada, NRS 50.275 governs the admissibility of expert witness testimony. NRS 50.275 states:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by special knowledge, skill, experience, training or education may testify to matters within the scope of such knowledge.

"The district court has discretion to determine the admissibility of expert testimony, and we review this decision for a clear abuse of discretion." *Sampson v. State*, 121 Nev. 820, 827, 122 P.3d 1255, 1259 (2005). "The district court is in a better position than this

court to determine the helpfulness of proposed testimony in light of the material facts in issue." *Krause Inc. v. Little*, 117 Nev. 929, 934, 34 P.3d 566, 569 (2001). "When the district court's exercise of discretion is not manifestly wrong [pursuant to] NRS 50.275, we will not reverse." *Id.*

Coppola testified that, after she finished speaking with the police the night of the attack, she spent time on her own trying to focus on her assailant's appearance. She explained that the training she had received when obtaining her art degree had helped her to remember the proportions of an individual's face. While Coppola testified about this special training, we conclude that it did not constitute expert testimony. Coppola was not testifying about her art knowledge. Rather, she was explaining to the jury how she knew special techniques for remembering her assailant's appearance. Therefore, we conclude that the district court did not abuse its discretion in overruling Thompson's objection to Coppola's testimony.[6]

### The photographs

Thompson asserts that the district court abused its discretion when it admitted photographs of Coppola's injuries. We disagree.

Pursuant to NRS 48.025, only relevant evidence is admissible at trial. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." NRS 48.015. "The district court enjoys broad discretion in determining whether evidence should be admitted." *Prabhu v. Levine*, 112 Nev. 1538, 1548, 930 P.2d 103, 110 (1996).

Thompson objected to the State admitting photographs of Coppola's injuries on the basis that they were irrelevant because he was not charged with battery. The district court overruled the objection, stating that Thompson was charged with counts that required the State to prove force and fear. The district court did not abuse its discretion. The evidence was relevant to prove that Thompson forced Coppola into her car. *See* NRS 48.015; *Dutton v. State*, 94 Nev. 461, 464, 581 P.2d 856, 858 (1978) (noting that "[t]he state is entitled to present a full and accurate account of the circumstances of the commission of the crime, and if such an account also implicates the defendant or defendants in the commission of other crimes for which they have not been charged, the evidence is nevertheless ad-

---

[6]Because we conclude that the district court properly found that Coppola was not testifying as an expert, we need not reach Thompson's argument that he was not given notice of the alleged expert testimony.

missible'' (internal quotation omitted)), *overruled on other grounds by Gray v. State*, 100 Nev. 556, 558 n.1, 688 P.2d 313, 314 n.1 (1984). Accordingly, we conclude that the district court did not abuse its discretion when it admitted the photographs of Coppola's injuries.[7]

*Sufficiency of the evidence*

Thompson argues that the State presented insufficient evidence at trial to support the verdict. Specifically, Thompson argues that the State failed to show that he was one of Coppola's attackers. We disagree.

'' 'Insufficiency of the evidence occurs where the prosecution has not produced a minimum threshold of evidence upon which a conviction may be based.' '' *Mejia v. State*, 122 Nev. 487, 492, 134 P.3d 722, 725 (2006) (quoting *State v. Walker*, 109 Nev. 683, 685, 857 P.2d 1, 2 (1993)). In reviewing whether there is sufficient evidence to support a jury's verdict, this court determines '' ' ''whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'' ' '' *Id.* (quoting *Koza v. State*, 100 Nev. 245, 250, 681 P.2d 44, 47 (1984) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979))). Where there is substantial evidence supporting the jury's verdict, it will not be overturned on appeal. *Hern v. State*, 97 Nev. 529, 531, 635 P.2d 278, 279 (1981). Substantial evidence is ''evidence that 'a reasonable mind might accept as adequate to support a conclusion.' '' *Brust v. State*, 108 Nev. 872, 874-75, 839 P.2d 1300, 1301 (1992) (quoting *First Interstate Bank v. Jafbros Auto Body*, 106 Nev. 54, 56, 787 P.2d 765, 767 (1990) (internal quotation marks omitted), *abrogated on other grounds by Countrywide Home Loans v. Thitchener*, 124 Nev. 725, 743, 192 P.3d 243, 255 (2008)).

Coppola identified Thompson as one of her attackers both in the photographic lineup and at trial. Her testimony was corroborated by

---

[7]From this it follows that it was not an abuse of discretion for the district court to deny Thompson's pretrial motion in limine to exclude the photographs. Thompson also argues on appeal that the district court should have excluded the photographs because their probative value was substantially outweighed by the danger of unfair prejudice. *See* NRS 48.035(1). Thompson did not object to the photographs on this ground below, and he cannot assert new grounds for objection on appeal. *Geer v. State*, 92 Nev. 221, 224, 548 P.2d 946, 947 (1976). Thompson also has not demonstrated plain error in this respect. *See* NRS 178.602 (''Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.''); *Moore v. State*, 122 Nev. 27, 36-37, 126 P.3d 508, 514 (2006) (explaining that failure to object generally precludes appellate review unless the defendant demonstrates plain error).

the security guard, Bailey, who testified that he noticed Thompson walking around the apartment complex just before the attack. Viewing this evidence in the light most favorable to the State, we conclude that any rational juror could find that Thompson was one of Coppola's attackers beyond a reasonable doubt. Furthermore, to the extent that Thompson argues that the State failed to prove the elements of the crimes for which he was charged, we note that we have considered the argument and have determined that the State presented substantial evidence supporting Thompson's convictions.

## CONCLUSION

For the foregoing reasons, we conclude that Thompson's arguments lack merit and we therefore affirm the district court's judgment of conviction. In so doing, we reaffirm that NRS 178.562(1) did not bar the State from electing between two pending vehicles for prosecution of the same offenses by choosing to prosecute Thompson on the grand jury indictment after it voluntarily dismissed the criminal complaint. As held in *Turpin v. Sheriff*, 87 Nev. 236, 238, 484 P.2d 1083, 1085 (1971), a defendant is not prejudiced by the State choosing to pursue one of two pending proceedings for the same offense.

HARDESTY, C.J., PARRAGUIRRE, DOUGLAS, GIBBONS, and PICKERING, JJ., concur.

CHERRY, J., concurring:

I just want to make it perfectly clear how I view the jurisprudence set forth in *Turpin v. Sheriff*, 87 Nev. 236, 484 P.2d 1083 (1971), and the amendment identified as NRS 174.085 as an exception to bar another prosecution for the same offense following dismissal of an action where there is no other information or indictment pending for that offense.

The big distinction between using *Turpin* to allow the State to prosecute a defendant when it has elected, between two pending forms of prosecution and not allowing the State to pursue an election between two pending forms of prosecution in accordance with NRS 174.085 is when the dismissal occurs either before the subsequent form of prosecution is obtained or after the subsequent form of prosecution is obtained by the State.

If the State files a criminal complaint or information, then dismisses the case, and subsequently indicts the defendant on the same charge or charges, NRS 174.085 comes into play to bar the subsequent prosecution for the same offense or offenses, unless good cause is shown to the court and upon written findings and a court order to that effect. However, if the dismissal occurs when

both forms of prosecution are still pending NRS 174.085 is not applicable.

Finally, I want prosecutors and criminal defense attorneys to know that if a criminal complaint or information is filed and then the defendant is indicted on the same charges and additional charges, *Turpin* applies if the criminal complaint or information is dismissed and NRS 174.085 would not be applicable nor would dismissal by the court of the indictment be proper.