An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123

# IN THE SUPREME COURT OF THE STATE OF NEVADA

MICHAEL ALAN KINCADE,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 63563

**FILED**

NOV 2 0 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of three counts of sexual assault of a minor, four counts of use of the internet to view presentation of sexual conduct of a person under 16 years of age, and three counts of attempted use of the internet to view presentation of sexual conduct of a person under 16 years of age. Seventh Judicial District Court, Lincoln County; Steve L. Dobrescu, Judge.

Appellant Michael Kincade argues that his conviction should be reversed for several reasons. Addressing Kincade's arguments in turn, we conclude that these issues do not warrant reversal, and we affirm.

*Request for independent psychological evaluations of minor victims*

First, Kincade argues that the district court abused its discretion by denying his request to conduct independent psychological evaluations of minor victims B.K. and N.H. A district court should grant such a request if the defendant demonstrates "a compelling need . . . for such an intrusion," based on

> whether the State actually calls or obtains some benefit from an expert in psychology or psychiatry, whether the evidence of the offense is supported by little or no corroboration beyond the testimony of the victim, and whether there is a reasonable basis for believing that the victim's mental or emotional state may have affected his or her veracity.

*Koerschner v. State*, 116 Nev. 1111, 1116-17, 13 P.3d 451, 455 (2000).

14-38302

Because the State conceded in the district court and at oral argument that it benefitted from an expert in psychiatry, this factor weighed in favor of granting Kincade's request. *See id.*

The district court, however, did not abuse its discretion by finding that "the evidence of the offense [was] supported by . . . corroboration beyond the testimony of the victim." *See id.* The district court found that B.K. and N.H.'s similar accounts of one incident of abuse corroborated each boy's allegations, and we agree. We also note that B.K. disclosed sexual abuse involving both him and N.H., despite not having had a recent opportunity to conspire with N.H. to fabricate allegations, suggesting that B.K. was telling the truth. Further, Kincade's work computer was used to access websites dedicated to child pornography and stories regarding incest with children, photographs of nude or scantily clothed children were found on this computer, and Kincade admitted to collecting child pornography in the past. Given that Kincade is related to both B.K. and N.H., evidence that Kincade sought out stories about incest lent further credence to the boys' allegations. Therefore, even in the absence of physical evidence of the abuse, we cannot conclude that the district court abused its discretion by determining that the allegations were corroborated. *Cf. Abbott v. State*, 122 Nev. 715, 731, 138 P.3d 462, 472 (2006) (stating that allegations were uncorroborated in the absence of physical evidence and other witnesses).

We also conclude that the district court did not abuse its discretion by finding that there was no "reasonable basis for believing that the victim's mental or emotional state may have affected his . . . veracity." *See Koerschner*, 116 Nev. at 1117, 13 P.3d at 455. Kincade argues that because B.K. was sexually abused in the past, he had the knowledge necessary to fabricate the allegations. As we stated in *Abbott*, a reasonable

SUPREME COURT
OF
NEVADA

(O) 1947A

2

basis exists to question a victim's veracity where "the victim made prior *unsubstantiated* allegations, engaged in sexual behavior, and had been exposed to sexual activities." 122 Nev. at 731, 138 P.3d at 473 (emphasis added). Here, there is no evidence that B.K. made prior unsubstantiated allegations or engaged in sexual behavior beyond the events surrounding the prior abuse. Moreover, no evidence suggests that the prior abuse somehow affected B.K.'s ability to tell the truth. Kincade further argues that an independent psychological examination was required because B.K. was angry with Kincade. The jury heard extensive testimony that B.K. was angry with Kincade and that anger could be a motive to lie. Any juror could understand, without the assistance of an expert, that an angry child might lie to hurt the person with whom he was angry. *See* NRS 50.275 (expert testimony may be admissible where "specialized knowledge will assist the trier of fact to understand the evidence"). Accordingly, the district court did not abuse its discretion by finding that there was no reasonable basis on which to question B.K.'s veracity. *See Koerschner*, 116 Nev. at 1117, 13 P.3d at 455; *see also Abbott*, 122 Nev. at 731, 138 P.3d at 473.

Kincade also argues that there is a reasonable basis for questioning N.H.'s veracity based on Special Investigator Maribah Cowley's interviewing techniques, family influences over N.H. after N.H. was removed from Kincade's care, and N.H. being between sleep and awake when the abuse occurred. N.H. testified that he did not feel that Cowley pressured him to adopt B.K.'s allegations, and the district court found that N.H. originally wanted to protect Kincade but told Cowley the truth when he believed that Kincade would get help. We cannot conclude that these findings were erroneous. Similarly, while some evidence suggested that N.H. may have been subjected to family influences after

SUPREME COURT
OF
NEVADA

(O) 1947A

3

being removed from Kincade's care, the actual existence or extent of these influences is unclear, and N.H. testified that he only discussed the case with family once. We conclude that the mere suggestion of family influence is inadequate to show a "compelling need" for an independent psychological evaluation. *See Koerschner*, 116 Nev. at 1116, 13 P.3d at 455. Further, although N.H. testified at the preliminary hearing that he could have dreamt the abuse, he testified at trial that he was confused by some of the questions asked at the preliminary hearing, he was sure that the abuse actually occurred and he did not dream it, and he would not have dreamed about sexual abuse because he did not dream of things that he had not experienced. In addition, there was some evidence that N.H. had hallucinations and was in special education programs at some point, but the record does not suggest how recent or severe these issues were. Accordingly, the district court did not abuse its discretion by finding that Kincade failed to show a reasonable basis for questioning N.H.'s veracity. *See Koerschner*, 116 Nev. at 1116-17, 13 P.3d at 455; *see also Abbott*, 122 Nev. at 731, 138 P.3d at 473.[1]

---

[1]Our conclusion is confirmed by looking to other jurisdictions' decisions, which appear to address this reasonable-basis factor in terms of whether the victim's ability to tell the truth was affected by a mental disease or defect. *See, e.g., United States v. Benn*, 476 F.2d 1127, 1130-31 (D.C. Cir. 1973) (affirming a district court order denying a motion for a psychological evaluation where the "mentally defective" victim understood "her duty to tell the truth," demonstrated her ability "to observe and remember," and the jury heard evidence regarding the victim's condition); *In re Michael H.*, 602 S.E.2d 729, 731, 735 (S.C. 2002) (stating that a psychological evaluation of a child victim was required where the child experienced auditory hallucinations at the time the abuse allegedly occurred and when the child made the allegations); *State v. Osgood*, 667 N.W.2d 687, 692 (S.D. 2003) (stating that "the purpose of a psychological or psychiatric examination of the victim . . . is to detect any *thought disorders*

*continued on next page...*

In conclusion, the district court did not abuse its discretion by denying Kincade's request for independent psychological evaluations of B.K. and N.H.[2]

*Motion to sever the charges*

Kincade next argues that the district court abused its discretion by denying his motion to sever the sexual assault charges from the internet charges and by admitting evidence of the sexual assaults to prove the internet charges and vice versa.

Offenses may be joined if they are "[b]ased on two or more acts or transactions connected together." NRS 173.115. Charges are "connected together" if "evidence of either crime would be admissible in a separate trial regarding the other crime." *Weber v. State*, 121 Nev. 554, 573, 119 P.3d 107, 120 (2005). Evidence of other acts is inadmissible to show a person's propensity to commit a crime, but is admissible to prove a defendant's motive, intent, plan, knowledge, identity, or absence of mistake or accident. NRS 48.045(2). To be admissible, such evidence "must be relevant, be proven by clear and convincing evidence, and have probative value that is not substantially outweighed by the risk of unfair prejudice." *Weber*, 121 Nev. at 573, 119 P.3d at 120.

---

*...continued*
or *distortion of perceptions* that might affect the credibility of the complaining witness" (emphasis added)).

[2]We also decline the State's invitation to abandon independent psychological evaluations and adopt "taint hearings" employed in other jurisdictions. *See Armenta-Carpio v. State*, 129 Nev. ___, ___, 306 P.3d 395, 398 (2013) (stating that this court is "loath to depart from the doctrine of stare decisis," and will not do so "absent compelling reasons" (internal quotation marks omitted)); *State v. Michaels*, 642 A.2d 1372, 1383-84 (N.J. 1994) (describing taint hearing procedure).

SUPREME COURT
OF
NEVADA

(O) 1947A

First, Kincade concedes that the evidence of each group of charges was relevant to the other.

Second, clear and convincing evidence supports both groups of charges. Uncontroverted evidence demonstrated that Kincade's IP address requested information from the charged websites, pop-up blockers and anti-malware programs were installed on the computer, no viruses or malware were found on the computer, and URLs and web search terms relating to child pornography were manually typed into the computer. Moreover, Kincade admitted that he collected child pornography in the past. Kincade argues that this evidence showed only a propensity to commit a crime and was thus improper. To the contrary, all of this evidence demonstrates intent and the absence of mistake or accident, which are proper purposes for evidence of other acts. See NRS 48.045(2).

Kincade also sought to create doubt that he actually visited the websites by showing that no graphics from the charged websites were found in the temporary internet files, but such files could be deleted and overwritten, leaving no trace. Additionally, there was evidence that some graphics had been deleted and partially overwritten, and Cowley testified that it appeared that someone attempted to physically damage the computer, suggesting that Kincade tried to conceal evidence of his internet activities by deleting files and physically damaging the computer. Accordingly, the internet charges are supported by clear and convincing evidence.

As to the sexual assault charges, Kincade questioned B.K.'s motives for making the allegations and argued that N.H. was coerced. Although the boys' testimony differed regarding the details of the summer 2009 incident, both boys testified clearly that Kincade came into the room

after they were in bed and sexually abused them both. Thus, clear and convincing evidence supports the sexual assault charges.

Third, we conclude that the danger of unfair prejudice from this evidence did not substantially outweigh its probative value. Cowley testified that child erotica indicated an offender's fantasies, and the child pornography accessed by Kincade's computer was similar to B.K. and N.H.'s sexual assault allegations. Thus, the evidence of the sexual assaults was highly relevant to proving Kincade's intent, motive, and lack of mistake regarding the internet charges, and vice versa. *See* NRS 48.045(2). We also conclude that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. *See Weber*, 121 Nev. at 573, 119 P.3d at 120.

Accordingly, the district court did not abuse its discretion by refusing to sever the charges or by admitting the evidence of Kincade's other acts. *See id.* at 570, 119 P.3d at 119.

*Evidence of prior sexual abuse of B.K.*

Kincade next argues that the district court erred by excluding evidence that B.K. was previously sexually abused. Kincade offered this evidence to show that (1) B.K. should not have delayed in reporting the abuse, (2) B.K. abused N.H. and Kincade did not, and (3) B.K. knew an allegation of sexual abuse would have severe consequences for Kincade.

This court reviews claims of "nonstructural, constitutional error" for harmless error and will not reverse a conviction if the error was "harmless beyond a reasonable doubt." *Diomampo v. State*, 124 Nev. 414, 428, 185 P.3d 1031, 1040 (2008). Due process "assure[s] an accused the right to introduce into evidence any testimony or documentation which would tend to prove the defendant's theory of the case." *Vipperman v. State*, 96 Nev. 592, 596, 614 P.2d 532, 534 (1980). NRS 50.090 prohibits a

defendant from introducing evidence of a victim's prior sexual conduct to challenge the victim's credibility. Such evidence may be admissible, however, to show a child-victim's prior independent knowledge of sexual acts. *Summitt v. State*, 101 Nev. 159, 163-64, 697 P.2d 1374, 1377 (1985). Where a defendant offers such evidence, the defendant must "be given an opportunity to demonstrate that due process requires the admission of such evidence because the probative value in the context of that particular case outweighs its prejudicial effect on the prosecutrix." *Id.* at 163, 697 P.2d at 1377 (internal quotation marks omitted). In weighing the probative value of such evidence against the potential for prejudice, a district court should pay particular attention to "whether the introduction of the victim's past sexual conduct may confuse the issues, mislead the jury, or cause the jury to decide the case on an improper or emotional basis." *Id.* (internal quotation marks omitted).

In *Summitt,* the six-year-old victim was previously sexually abused, and the defendant offered evidence regarding this prior abuse "for the *sole and limited purpose* of challenging the witness's credibility by dispelling an inference . . . that a six year old child would be unable to describe the occurrences in her testimony unless they had in fact taken place." *Id.* at 162, 697 P.2d at 1376 (emphasis added).

Here, the district court found that no evidence suggested that a child of B.K.'s age would lack knowledge of fellatio, thus no inference of sexual innocence was raised. *See id.* This finding was supported by the facts that B.K. was almost 13 years old when he made the allegations and 14 years old at the time of trial, as opposed to six years old like the victim in *Summitt. See id.*

In addition, Kincade's proposed purposes for this evidence—to show unreasonable delay in reporting the abuse, that B.K. abused N.H.,

and that B.K. knew that reporting the abuse would cause severe consequences—are impermissible. *See id.* Even if these were permissible purposes for admitting evidence of a victim's prior sexual conduct, the evidence of B.K.'s prior abuse was, at best, only slightly relevant for these purposes. First, Kincade presents no evidence suggesting that a child who was previously abused would not delay in reporting additional abuse. Second, Kincade's suggestion that B.K. abused N.H. is not supported by the record. N.H. testified that when he was abused on July 4, 2010, Kincade was the only other person awake in the house and B.K. was not there. Further, N.H. testified that when the summer 2009 abuse occurred, he was in bed with B.K. when Kincade came into the room and abused both of them. Third, there is no evidence that B.K. would not have known that allegations of sexual abuse could result in severe consequences without having been previously abused.

Finally, regardless of how the district court may have limited this evidence, this evidence would have raised questions about the prior abuse in the jurors' minds. These questions could have confused or misled the jury, or caused the jury to decide the case on an improper basis. *See Summitt*, 101 Nev. at 163, 697 P.2d at 1377. Accordingly, the district court did not err in excluding evidence that B.K. was previously sexually abused. *See id.*

*Evidence of N.H.'s demeanor in the first interview*

Kincade next argues that the district court erred by excluding testimony from a police officer and a social worker who both interviewed N.H. before Cowley did. N.H. told them that he was safe with Kincade and, based on N.H.'s demeanor, they believed that N.H. was being honest.

The district court properly excluded testimony that N.H. was being honest at the prior interview. *See* NRS 50.085(1)(b) (opinion

evidence of truthful character is "admissible only after the introduction of opinion evidence of untruthfulness"); *Cordova v. State*, 116 Nev. 664, 669, 6 P.3d 481, 485 (2000) ("An expert may not comment on a witness's veracity."); *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) (stating that a jury determines the credibility of witnesses).

The district court, however, did not allow the officer or the social worker to testify at all. Because they could have properly testified regarding the interview and their observations, this was error. Nevertheless, because N.H. testified about the first interview, Cowley testified about her interviewing tactics, and the defense-retained psychiatrist testified that Cowley's tactics could be highly suggestive, additional testimony about the first interview would not have altered the verdict. Thus, the district court's error in excluding this testimony was harmless beyond a reasonable doubt. *See Diomampo*, 124 Nev. at 428, 185 P.3d at 1040.[3]

*Cowley's expert testimony on child erotica*

Next, Kincade argues that the district court abused its discretion by admitting Cowley's expert testimony regarding child erotica.

Where a party fails to provide adequate notice of expert testimony, the "court *may* . . . grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter

---

[3]The State argues that the district court properly excluded the testimony regarding N.H.'s demeanor as character evidence prohibited by NRS 50.085(3). This argument lacks merit because N.H.'s demeanor during this prior interview would not reflect on his character at all, but rather for the statements he made at the interview that contradicted his trial testimony. *Cf. Koerschner*, 116 Nev. at 1119, 13 P.3d at 457 (concluding that the district court properly excluded evidence of the victim's acts of theft to show that victim was dishonest).

such other order as it deems just under the circumstances." NRS 174.295(2) (emphasis added). A "district court has broad discretion in fashioning a remedy under" NRS 174.295. *Evans v. State*, 117 Nev. 609, 638, 28 P.3d 498, 518 (2001).

Although the State concedes that it failed to provide adequate notice of its intent to call Cowley as a child erotica expert, *see* NRS 174.234(2), Kincade at least had some idea that the State might present Cowley's testimony on child erotica at trial because Cowley gave similar, albeit less extensive, testimony in this case almost three months before trial. Kincade also declined the district court's offer of a continuance. Given these circumstances, the district court did not abuse its discretion by refusing to exclude Cowley's expert testimony due to improper notice. *See Evans*, 117 Nev. at 638, 28 P.3d at 518.

Nor did the district court abuse its discretion by concluding that Cowley was qualified to testify as an expert in child erotica. Where "specialized knowledge will assist the trier of fact to understand the evidence . . . , a witness qualified as an expert by special knowledge, skill, experience, training or education may testify to matters within the scope of such knowledge." NRS 50.275. A witness may be qualified as an expert based on "(1) formal schooling and academic degrees, (2) licensure, (3) employment experience, and (4) practical experience and specialized training," though these factors "may not be equally applicable in every case." *Hallmark v. Eldridge*, 124 Nev. 492, 499, 189 P.3d 646, 650-51 (2008) (footnotes omitted).

Cowley did not have a degree or license relating to child erotica, but the record does not suggest that such a degree or license is available. This was also Cowley's first case involving child erotica. Despite this lack of experience and licensure, it appears that Cowley's

specialized training in child erotica was relatively extensive. Moreover, the district court found that once a person was trained, child erotica was not a complex topic that required extensive experience to understand, and the record does not refute this finding. Accordingly, we conclude that the district court did not abuse its discretion by finding that, based on her training, Cowley was qualified to testify as a child erotica expert. *See id.*

*Authentication of computer reports*

Kincade next argues that the district court abused its discretion by allowing the State to authenticate computer reports by affidavit without notice of its intent to do so. Kincade does not dispute that these computer reports fell within the business record exception to the hearsay rule.

Business records may be admitted into evidence if they are "authenticated by a custodian of the record or another qualified person in a signed affidavit." NRS 52.260(1). A party must provide 10 days' notice if it intends to authenticate a record using such an affidavit. NRS 52.260(4). If a party reasonably questions the authenticity of a record, "the court may order the personal attendance of the custodian of the record or other qualified person." NRS 52.260(5).

At trial, Kincade objected to authentication of the computer reports through the affidavit, arguing that neither the affidavit nor the computer reports contained sufficient information to tie them to Kincade or to connect the documents to each other. The district court found that the affidavit adequately described the computer reports and there was no claim that the computer reports had been switched or altered, therefore the district court was not concerned about their authenticity. The State represented that it tried to get two different witnesses to testify, but neither was able to do so due to scheduling conflicts. Moreover, the State

offered to make additional efforts to get a live witness to testify regarding the computer reports, but Kincade did not insist that the State attempt to do so. Given the sufficiency of the affidavit and Kincade's lack of insistence that the State secure a live witness, we conclude that the district court did not abuse its discretion by allowing the State to authenticate the computer reports by affidavit. *See Mclellan v. State*, 124 Nev. 263, 269, 182 P.3d 106, 110 (2008) ("We review a district court's decision to admit or exclude evidence for an abuse of discretion.").[4]

*Authentication of photographs from websites*

Kincade next argues that the district court abused its discretion by admitting photographs from the charged websites without proper authentication. Specifically, Kincade argues that because the State did not present testimony that the photographs were not altered to make the children portrayed appear younger prior to being posted on the websites, the photographs were not properly authenticated.

Generally, to prove the contents of a photograph, the original photograph is required. NRS 52.235. However, "[i]f data are stored in a computer or similar device, any printout or other output readable by sight, shown accurately to reflect the data, is an 'original.'" NRS 52.205(3).

Cowley testified that she accessed the charged websites and printed the photographs directly from those websites without altering them. Although it was possible that the photographs were altered prior to

---

[4]The State also argues that Kincade waived this argument by failing to raise it below. Kincade's counsel, however, clearly expressed his desire and expectation that he would be able to cross-examine a live witness regarding the reports. Accordingly, we reject this argument. *Cf. Mclellan*, 124 Nev. at 269, 182 P.3d at 110 (stating that failing to object at trial generally precludes appellate review of an issue).

being placed online, the Legislature has reserved for the fact-finder the question of the ages of people depicted in alleged child pornography. *See* NRS 200.740. Regardless of any alterations that may have occurred before the photographs were posted on the websites, the photographs that Cowley printed were "output readable by sight," and therefore, were admissible as "original[s]." NRS 52.205(3).

Further, a contrary holding would render prosecution of child-pornography-related offenses exceedingly difficult by requiring extensive expert analysis and testimony to show that photographs were not altered prior to being posted online. Although a defendant must be able to present evidence and argument that photographs were or could have been altered, this possibility goes to the weight of the evidence, not its admissibility. *See Parker v. State*, 85 A.3d 682, 687-88 (Del. 2014) (declining to require expert testimony to authenticate social media evidence and leaving the weight of such evidence to the fact-finder); *but see People v. Beckley*, 110 Cal. Rptr. 3d 362, 366-67 (Ct. App. 2010) (recognizing ease of altering digital photographs and requiring expert testimony to authenticate photographs taken from social media). Accordingly, we conclude that Cowley's testimony regarding the photographs was sufficient to authenticate them, and the district court did not abuse its discretion by admitting these photographs.

*Cowley's testimony that she would have recommended additional charges*

Kincade argues that the district court abused its discretion by admitting Cowley's testimony that she would have charged Kincade with other crimes because this testimony was irrelevant.

During cross-examination, Kincade asked Cowley whether Kincade had been charged with possession of child pornography, and Cowley testified that he had not. This testimony could have suggested to

the jury that the photographs (1) were on Kincade's computer by mistake or without his knowledge, thereby suggesting that he did not intend to use the internet to view additional child pornography; or (2) did not amount to child pornography. Cowley's testimony on redirect that she would have recommended additional charges tends to rebut these suggestions and therefore was slightly relevant. *See* NRS 48.015 (stating that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable"). Because neither the State nor Cowley stated what additional charges she would have recommended, there was little or no prejudice resulting from this testimony. Accordingly, the district court did not abuse its discretion by allowing this testimony. *See* NRS 48.015; *see also Cordova*, 116 Nev. at 670, 6 P.3d at 485 (stating that a defendant may open the door, permitting the State to introduce evidence that it could not otherwise offer).

*New trial*

Kincade next argues that the district court abused its discretion by denying his motion for a new trial based on conflicting evidence.[5] A district court may grant a defendant's motion for a new trial if "the district judge disagrees with the jury's verdict after an independent evaluation of the evidence." *Washington v. State*, 98 Nev. 601, 603, 655 P.2d 531, 532 (1982); *see* NRS 176.515 (explaining district court's discretion and grounds to grant a new trial).

_____

[5]Below, Kincade also sought a new trial based on juror misconduct. On appeal, Kincade failed to make any argument regarding juror misconduct, except for a single sentence regarding cumulative error. Accordingly, we decline to address this issue. *See* NRAP 28(a)(9).

After independently evaluating the evidence of the internet charges, the district court chose not to overturn the verdict. This was not an abuse of discretion. *See Washington*, 98 Nev. at 603, 655 P.2d at 532 (noting the permissive nature of the statute and that a district judge may order a new trial if he or she disagrees with the jury's findings).

There was, in fact, conflicting evidence of the sexual assault charges, specifically B.K.'s motive to fabricate the allegations, the possibility that N.H. was coerced or influenced to make allegations, and N.H.'s difficulty with time and dates. Although the district court failed to specifically analyze the conflicting evidence of the sexual assault charges, the district court stated generally that there was conflicting evidence, but not so much that the district court was willing to grant a new trial. We encourage district courts to make thorough findings of fact and conclusions of law to enable thorough review on appeal, but even without such specific findings, the district court did not, in this instance, abuse its discretion by denying Kincade's motion for a new trial. *See id.*

*Sufficient evidence of the internet charges*

Last, Kincade argues that the State presented insufficient evidence to support the verdicts on the internet charges.

"In reviewing whether there is sufficient evidence to support a jury's verdict, this court determines 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Thompson v. State*, 125 Nev. 807, 816, 221 P.3d 708, 714-15 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Thus, we will not overturn a jury verdict if it is supported by substantial evidence. *Id.* at 816, 221 P.3d at 715. "Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal

SUPREME COURT
OF
NEVADA

(O) 1947A

16

quotation marks omitted). The State had to prove that Kincade (1) knowingly and willfully (2) used or attempted to use the internet to view child pornography on the charged websites (3) with the specific intent to view child pornography. *See* NRS 200.727(1).

The State presented evidence of web searches on Kincade's computer related to child pornography, child pornography found on Kincade's computer, websites relating to pornography that were manually typed into Kincade's computer, and evidence that Kincade admitted to collecting child pornography in the past. This evidence suggests that the charged websites were not requested by mistake or accident, such as a virus or pop-ups, and was sufficient to show that Kincade acted knowingly, willfully, and with the specific intent to view child pornography.

The State also presented evidence that Kincade's computer requested the charged websites, some websites were allowed while others were blocked, and each of the charged websites contained child pornography. There was testimony that it could not be determined from the internet history alone whether Kincade actually visited the charged websites or whether other websites automatically requested information from the charged websites and that the computer would have contained some evidence of visiting the charged websites if Kincade's computer visited them. There was also evidence presented, however, that photographs were deleted from the computer, computers overwrite deleted material leaving no trace of it, and the computer towers appeared to have been intentionally damaged, suggesting that Kincade may have taken steps to conceal his activities. Given this circumstantial evidence, the jury could reasonably conclude that Kincade actually visited or attempted to visit the charged websites and later successfully destroyed evidence of this

activity. *See Thompson*, 125 Nev. at 816, 221 P.3d at 715. Thus, the evidence was sufficient to sustain the convictions of the internet charges.[6]

Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____ , J.
Pickering

_____ , J.
Parraguirre

_____ , J.
Saitta

cc:     Hon. Steve L. Dobrescu, District Judge
        Dylan V. Frehner
        Attorney General/Carson City
        Lincoln County District Attorney
        Lincoln County Clerk

---

[6]Kincade also argues that cumulative errors denied him a fair trial. Because the district court's only error was excluding the police officer's and the social worker's testimony regarding their interviews of N.H., and we have determined that this error was harmless beyond a reasonable doubt, this argument lacks merit. *See Rose v. State*, 123 Nev. 194, 211, 163 P.3d 408, 419 (2007).